UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT JESSE HILL,

                    Petitioner,

        v.

ROBERT JACKSON,

                    Respondent.

Case No. 3:23-cv-05739-JLR-TLF

REPORT AND RECOMMENDATION

Noted for May 17, 2024

This matter comes before the Court on Robert Jesse Hill's federal habeas corpus petition under 28 U.S.C. § 2254, challenging the legality of his conviction for the crimes of three counts of assault in the third degree, unlawful possession of a controlled substance, obstruction of law enforcement officer, and driving while under the influence of intoxicants. Dkt. 13 at 1.

For the reasons set forth below, the undersigned recommends that the petition should be DISMISSED. Also, for the reasons set forth below, the undersigned recommends denial of the certificate of appealability (COA).

<u>BACKGROUND</u>

I.  <u>Statement of Facts</u>

The Washington Court of Appeals summarized the facts relevant to this matter as follows:

> Hill had a confrontation with a construction worker on a construction site. Later that day, Hill drove back to the construction site and parked, blocking a cement truck. Hill refused to move his vehicle. Pierce County Sheriff's Deputies

Charles Roberts, Emily Holznagel, and Kevin Finnerty responded to calls regarding the dispute.

Deputy Roberts knocked on Hill's window, stating that he needed to speak with him. Hill rolled down his window about two to three inches. Deputy Roberts instructed Hill that he needed to step out of the vehicle. Hill refused, then put his vehicle in reverse and started to back up. Deputy Roberts instructed him not to back up. Hill put his vehicle into park. Deputy Roberts instructed him again that he needed to step out of the vehicle. Hill put the vehicle in reverse and backed up again.

At this point, Deputy Roberts observed that Hill's speech was slurred and his eyes were bloodshot. Deputy Roberts instructed Hill to get out of the vehicle so that deputies could investigate whether Hill was intoxicated. Deputy Roberts slapped the window, and instructed Hill to stop the vehicle and put it in park. Deputy Roberts instructed Hill to step out of the vehicle, or he would break the window and forcibly remove Hill. Hill refused, and backed up his vehicle for a third time. Deputy Finnerty then broke the driver's side window with his flashlight.

After Deputy Finnerty broke the driver's side window, Deputy Roberts opened the door to remove Hill from the vehicle. Hill grabbed a mace gun and pointed it at all three deputies. Deputy Roberts knocked the mace gun out of Hill's hand, and the deputies grabbed Hill and removed him from the vehicle.

The deputies then handcuffed Hill. While being searched for weapons, Hill slammed his head against the patrol vehicle twice. After Hill was put into a patrol vehicle, he continued to bang his head.

Hill's vehicle was taken to a sheriff precinct where Deputy Finnerty found the keys in the ignition. The key did not work to open Hill's trunk, and the police had to use force to open the trunk. During their search of the vehicle, deputies found an orange pill bottle "in a box under a box." Verbatim Report of Proceedings (VRP) (June 5, 2017) at 148. The box contained 86 pills of alprazolam. Additionally, Deputy Roberts found "dozens and dozens of alcohol bottles" in the vehicle.

The State charged Hill with three counts of third degree assault, one count of unlawful possession of a controlled substance, one count of obstructing a law enforcement officer, and one count of driving under the influence (DUI) of alcohol. Before trial began, Hill pleaded guilty to driving under the influence. He went to trial on the remaining charges.

Dkt. 27-1 at 18-33, Court of Appeals Unpublished Opinion, Cause No. 50386-7-II

(January 23, 2019).

II.  State Court Procedural History

**A.    Direct Appeal**

On January 22, 2018 counsel acting on behalf of petitioner filed a direct appeal of the judgment and sentence in the Washington State Court of Appeals. Dkt. 27-1 at 42-69, Appellant's Opening Brief, Court of Appeals Cause No. 50386-7-II (January 22, 2018). On January 23, 2019, the Court of Appeals affirmed the judgment and sentence but remanded to the trial court to strike the criminal filing fee, the DNA fee, and interest accrual. Dkt. 27-1 at 18-33, Court of Appeals Unpublished Opinion, Cause No. 50386-7-II (January 23, 2019).

On February 15, 2019 petitioner's counsel filed a petition for review in the Washington State Supreme Court arguing (1) Hill received ineffective assistance of counsel due to his attorney's unreasonable failure to request a jury instruction on voluntary intoxication, (2) the State did not prove beyond a reasonable doubt that Hill had dominion and control over the Alprazolam, (3) Hill received ineffective assistance of counsel due to his attorney's  unreasonable failure to request a jury instruction on the lesser crime of unlawful display of a weapon. Dkt. 27-1 at 126-128, Petition for Review, Washington Supreme Court Cause No. 96852-7 (February 15, 2019). On May 1, 2019, the Washington Supreme Court denied review without comment. Dkt. 27-1 at 214, Order, Washington Supreme Court Cause No. 96852-7 (May 1, 2019). On May 9, 2019, the Court of Appeals issued the mandate. Dkt. 27-1 at 216-217, Court of Appeals Mandate, Superior Court No. 16-1-04605-5 (May 9, 2019).

Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on November 18, 2019. *Hill v. Washington*, 140 S. Ct. 532 (2019).

1  **B.    Personal Restraint Petitions**

2         On February 14, 2019, petitioner filed a personal restraint petition ("PRP")

3  challenging a Department of Corrections decision that he had violated his conditions of

4  community custody. Dkt. 27-1 at 399, Order Dismissing Petition, Court of Appeals

5  Cause No. 53016-3-II (July 19, 2019). On July 19, 2019 the acting chief judge for the

6  Washington State Court of Appeals Division II dismissed the petition as moot. *Id*.

7  Petitioner did not seek discretionary review and on February 3, 2020 the Court of

8  Appeals issued the certificate of finality. Dkt. 27-1 at 398, Certificate of Finality, Court

9  Appeals Cause No. 53016-3-II (February 3, 2020).

10        On August 1, 2019 petitioner filed a second PRP, alleging the trial court erred by

11  ordering that he undergo a mental status evaluation and treatment. Dkt. 27-1 at 401,

12  Order Dismissing Petition, Court of Appeals Cause No. 53673-1-II (November 25,

13  2019). On November 25, 2019 the Court of Appeals dismissed the petition. *Id*. Petitioner

14  did not seek discretionary review and on September 14, 2020, the Court of Appeals

15  issued a certificate of finality. Dkt. 27-1 at 400, Certificate of Finality, Court of Appeals

16  Cause No. 53673-1-II (September 14, 2020).

17        On May 8, 2020 petitioner filed a third PRP, alleging his trial counsel was

18  ineffective, his guilty plea was involuntary, and the police conducted an illegal search.

19  Dkt. 27-1 at 219-248, Personal Restraint Petition (May 8, 2020). On July 9, 2021, the

20  Court of Appeals transferred the petition to the Washington Supreme Court. Dkt. 27-1 at

21  431-432, Order Transferring Petition to Supreme Court, Court of Appeals Cause No.

22  54586-1-II (July 9, 2019). On February 4, 2022, the Commissioner dismissed the

23  petition. Dkt. 27-1 at 35-40, Ruling Dismissing Personal Restraint Petition, Court of

24

25

Appeals Cause No. 54586-1-II (February 4, 2022). On July 13, 2022, the Washington Supreme Court denied petitioner's motion to modify. Dkt. 27-1 at 487, Order, Washington Supreme Court Cause No. 99970-8 (July 13, 2022). On July 19, 2022 the Court of Appeals issued a certificate of finality. Dkt. 27-1, Certificate of Finality, Court of Appeals Cause No. 99970-8 (July 19, 2022).

III.  Discussion

Petitioner filed his federal habeas corpus petition on July 28, 2023. Dkt. 1. Respondent argues that petitioner filed his petition outside the time limit imposed by the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244 et seq. Further, respondent argues petitioner's situation does not allow tolling that would excuse the late filing. Dkt. 26.

**A.      Statute of Limitations**

Under AEDPA, a petitioner has a one-year time limit, after the state court's judgment becomes final, for filing a Section 2254 federal habeas corpus petition, under 28 U.S.C. § 2244(d)(1)(A): "[t]he limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

If a petitioner fails to petition the state's highest court for review, the conviction becomes final when the time for seeking such review elapses. *See Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001). A notice of appeal from a conviction in a Superior Court for the State of Washington must be filed in the trial court within 30 days after the entry of the decision of the trial court. Wash. RAP 5.2(a). Thus, if no

1  direct appeal is filed, the state court judgment becomes final at the end of the thirty-day

2  period. *See id*; 28 U.S.C. § 2244(d)(1)(A).

3       The federal limitation period may run from a later date under the following

4  circumstances:

5       • first, it may run from the date on which the impediment to filing an

6          application created by State action in violation of the Constitution or laws of

7          the United States is removed – if the applicant was prevented from filing by

8          such State action. 28 U.S.C. § 2244(d)(1)(B);

9       • second, it may run from the date the United States Supreme Court

10         recognizes a new constitutional right that the Supreme Court makes

11         retroactive to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C);

12      • third, it may run from the date the factual predicate of the claim presented

13         could have been discovered through the exercise of due diligence. 28 U.S.C.

14         § 2244(d)(1)(D).

15      The one-year limit of AEDPA also specifies, "[t]he time during which a *properly*

16  *filed* application for State post-conviction or other collateral review with respect to the

17  pertinent judgment or claim is pending shall not be counted toward any period of

18  limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). For

19  purposes of 28 U.S.C. § 2244(d)(1)(A), direct review usually concludes and the

20  judgment becomes final either – upon the expiration of the time for filing a petition for

21  writ of certiorari with the United States Supreme Court, or when the Court rules on a

22  timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir.

23  1999).

24

25

1    In this case, Pierce County Superior Court entered petitioner's judgment and

2  sentence on August 3, 2017. Dkt. 27-1 at 2-16, Judgment and Sentence, Pierce County

3  Cause No. 16-I-04605-5 (August 3, 2017). Petitioner filed an appeal which was pending

4  until November 18, 2019, when the U.S. Supreme Court denied his petition for a writ of

5  certiorari. *See Hill v. Washington*, 140 S. Ct. 532 (2019). Petitioner subsequently filed

6  three personal restraint petitions. The Court of Appeals issued the final certificate of

7  finality on July 19, 2022. Dkt. 27-1, Certificate of Finality, Court of Appeals Cause No.

8  99970-8 (July 19, 2022). Accordingly, the one year period began to run on that date. 28

9  U.S.C. § 2244(d)(2). Petitioner filed his federal habeas corpus petition on July 28, 2023,

10  nine days past the statute of limitations.

11    Thus, unless tolling applies, the Court should dismiss his federal habeas corpus

12  petition as time-barred.

13  **B.    Equitable Tolling**

14    A federal habeas corpus petitioner is entitled to equitable tolling only if they

15  show: (1) they have been diligently pursuing their rights and (2) extraordinary

16  circumstances prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The

17  petitioner must also show that extraordinary external forces, rather than their own lack

18  of diligence, caused the untimeliness and made it impossible to file a timely petition.

19  *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009); *Miles v. Prunty*, 187 F.3d 1104,

20  1107 (9th Cir. 1999). The threshold necessary to obtain equitable tolling is very high,

21  "lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.

22  2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

23

24

25

1    Petitioner argues that "numerous incidents, mostly involving Department of

2   Corrections staff . . . have interfered with his ability to timely file his petition." Dkt. 31 at

3   2. These incidents include lack of access to the law library and legal documents, moving

4   facilities, and custodial transfers. *Id*. at 2-8. Petitioner also presents 150 pages of

5   exhibits to support his argument, largely consisting of grievances filed regarding these

6   events. Dkt. 30.

7    Specifically, petitioner alleges that prior to November 3, 2022, while housed at

8   Airway Heights Corrections Center ("AHCC"), he was unable to access the law library to

9   conduct legal research. Dkt. 30 at 7.

10    He then alleges that for the period of November 3, 2022 to February 11, 2023,

11  after being transferred to Washington Corrections Center ("WCC"), he was denied

12  access to three boxes of legal papers that had followed him from AHCC. *Id*. at 5-6. On

13  November 10, 2022 petitioner filed a grievance stating that forms to request priority

14  access to the law library, photocopies/scans, and legal materials were not available on

15  the supplies cart. *Id*. at 102. On December 1, 2022 Resolutions Specialist Amber

16  Roberts informed petitioner that the law librarian and CUS Bailey had been made aware

17  of the request, he had been approved for priority access to the law library, and his legal

18  paperwork would be issued to him. *Id*. On December 13, 2022 petitioner filed another

19  grievance, stating that he was denied use of a desktop/laptop. On December 28, 2022

20  Resolutions Specialist Mike Johnson responded stating that SMU is not set up with

21  desktop/laptop equipment but stated that petitioner was permitted access to his legal

22  work in accordance with the policy regarding segregation. *Id*. at 104-105.

23

24

25

On January 23, 2023, petitioner filed a grievance stating that seven pieces of legal mail sent out on November 15 and November 22, 2022 had gone missing. *Id*. at 97. On March 15, 2023 Resolution Specialist Amber Roberts responded that upon a review of the records his claim was found to be unsubstantiated. *Id*.

On December 19, 2022 petitioner again filed a grievance regarding his access to the library. *Id*. at 92. At level three of the grievance process Deputy Assistant Secretary Eric L. Jackson responded that he was provided with the appropriate time provided in IMU – up to four hours a week – and his restrictive housing assignment was due to an infraction of threatening. *Id*. at 95. On January 3, 2023, petitioner filed a grievance regarding his access to his legal papers. *Id*. at 83. At level two Resolution Specialist Amber Roberts responded that petitioner was afforded the opportunity to go through a total of three boxes and have one in his possession, in accordance with restrictive housing policy. *Id*. at 84. At level three Deputy Assistant Secretary Eric L. Jackson responded that on January 30, 2023 petitioner was able to access all of his legal property. *Id*. at 86.

After he was transferred to Washington State Penitentiary ("WSP") on February 11, 2023, petitioner alleges that he was denied access to legal forms, his legal papers, and the law library. *Id*. at 4. On April 5, 2023, petitioner filed a grievance stating that for the past three weeks he had been denied forms for legal photocopy/scan, priority access to the law library, and appeal receipt forms for infraction. *Id*. at 71. His grievance was found unsubstantiated at levels one and two, however, on June 16, 2023, Deputy Assistant Secretary Jeffery A. Uttecht responded that his concern was found to be

substantiated and he had not been provided the forms as requested when they should have been. *Id*. at 73.

On May 8, 2023 petitioner filed a grievance stating that his legal process was being obstructed in regard to five open cases because two boxes of legal papers were not brought with him in his transfer from another unit. *Id*. at 69. Petitioner alleges that after an incident with a fellow inmate on May 28, 2023 he was transferred to a different unit which caused him to again be separated from his legal papers. *Id*. at 3.

Petitioner then states that on July 6, 2023 he was in the process of finalizing his petition but was involved in another incident with a fellow inmate which caused him to be separated from his legal papers. *Id*. at 1-2. He states that on the same day he requested another blank petition from the law library but was not provided this or his legal papers until after the deadline for filing his petition had passed. *Id*. On August 2, 2023 petitioner filed multiple grievances related to not getting his legal forms and papers. *Id*. at 13, 55. His grievances were resolved at level three where he was informed that he failed to follow procedure despite being informed of the steps he needed to take. *Id* at 15-16, 57-58.

Petitioner has shown that extraordinary circumstances occurred, between February 22, 2023 and June 16, 2023, as determined by Assistant Secretary Uttecht. This was an impediment to timely filing in this case, and that impediment was outside his control. The Ninth Circuit has held that "a complete lack of access to a legal file may constitute an extraordinary circumstance." *Ramirez*, 571 F.3d at 998. In this case, petitioner has shown that Assistant Secretary Uttecht found petitioner was completely restricted from obtaining certain forms necessary for gaining access to the law library

and for processing his legal cases; and petitioner has stated this prevented him from being able to work on his legal files. Dkt. 30 at 4-7, Affidavit of Petitioner, and at 71-74, documentation of grievance process.

As to the other periods, petitioner faced standard restrictions due to his placement in administrative segregation. These restrictions are not extraordinary. *Id*.

Accordingly, petitioner's petition should be found timely and appropriate for equitable tolling between February 22, 2023 and June 16, 2023.

**C.    Exhaustion**

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion thus may not be implied or inferred. A petition can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). Here, petitioner appears to have presented his claims to the Washington Supreme Court and thus exhausted his state court remedies. Petitioner's claims, therefore, will now be reviewed on their merits.

**D.    Merits**

1.    Standard of Review

A habeas corpus petition filed under 28 U.S.C. § 2254:
[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*; *see also Schriro v. Landrigan*, 550 U.S., 465, 473 (2007).

This is a "'highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

1  that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

2  could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

3  562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)).

4  "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

5  systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

6  (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

7  judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

8  " a state prisoner must show that the state court's ruling on the claim being presented

9  was so lacking in justification that there was an error well understood and

10 comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*

11 at 103.

12      A federal habeas corpus petition also may be granted "if a material factual finding

13 of the state court reflects 'an unreasonable determination of the facts in light of the

14 evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262,

15 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual

16 determination is "presumed to be correct," though, and the petitioner has "the burden of

17 rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

18 2254(e)(1). As such, a district court "may not simply disagree with the state court's

19 factual determinations," but rather it must "conclude" that those determinations did not

20 have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d

21 1041, 1046 (8th Cir. 1998). "[W]hether a state court's decision was unreasonable" also

22 "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542

23 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's

24

25

review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011).

In addition, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780 (1990)).

The error, furthermore, must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

2.    <u>Fourteenth Amendment</u>

In ground one, petitioner alleges that the court of appeals failed to follow state law regarding the availability of unlawful display of weapons as lesser included offense jury instruction. Dkt. 13 at 5.

It appears that this is not its own ground for relief, but rather an argument related to petitioner's ground two. This is a claim grounded in state law, and therefore it should be dismissed. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

### 3.    Sixth Amendment Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel in grounds two through seven. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

 Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. A defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. Under this "doubly deferential" standard, "a federal court may grant relief only if every 'fairminded juris[t]' would agree that every reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739-40 (2021) (quoting *Harrington*, 562 U.S. at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

### A. Failure to discuss unlawful display of a weapon and voluntary intoxication.

In ground two, petitioner contends his trial counsel was ineffective because they failed to discuss unlawful display of a weapon and voluntary intoxication with him. Dkt. 13 at 7. Petitioner raised the failure to request a jury instruction on voluntary intoxication and unlawful display of a weapon in his direct appeal. *See* Dkt. 27-1 at 25-26, 30-32, Opinion, Court of Appeals Cause No. 16-1-04605-5, January 23, 2019. In a personal restraint petition he raised the failure to advise him regarding jury instructions for

voluntary intoxication and unlawful display of a weapon. *See* Dkt. 27-1 at 38, Commissioner's Ruling Dismissing Personal Restraint Petition, Supreme Court Cause No. 99970-8, February 4, 2022.

On direct appeal, the Washington Court of Appeals determined that petitioner failed to show that his counsel's decision to not request the voluntary intoxication instruction was not tactical and therefore failed to prove deficient performance. Dkt. 27-1 at 26, Opinion, Court of Appeals Cause No. 50386-7-II, January 23, 2019. The court also found that petitioner was not entitled to an instruction on unlawful display of a weapon as a lesser included offense to assault three and therefore his counsel was not deficient in not requesting the instruction. *Id*. at 32.

In rejecting the personal restraint petition, the Washington Supreme Court Commissioner held petitioner's claim that his counsel was deficient in failing to advise him on the jury instructions was frivolous because he failed to meet the evidentiary burden and instead "simply asserts that trial counsel failed to properly advise and investigate the case." Dkt. 27-1 at 38, Commissioner's Ruling Dismissing Personal Restraint Petition, Supreme Court Cause No. 99970-8, February 4, 2022. The Commissioner also noted that this issue was already adjudicated in his direct appeal and petitioner failed to demonstrate that the interests of justice required relitigating that issue. *Id*. At 39.

    i.   <u>Voluntary intoxication</u>

As for the voluntary intoxication instruction, the Commissioner of the Washington Supreme Court did not unreasonably apply the *Strickland* standard; petitioner did not meet his burden under *Strickland* to show that his counsel was deficient in purportedly

failing to discuss the jury instruction of voluntary intoxication with him or that this failure prejudiced his defense. *Strickland*, 466 U.S. at 687. However, even if petitioner had presented any evidence, the Washington Supreme Court has held that under Washington's Rules of Professional Conduct and the standards promulgated by the American Bar Association, "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and [their] counsel but ultimately rests with defense counsel." *State v. Grier*, 171 Wn.2d 17, 32 (2011). The court of appeals determined that the decision not to request the voluntary intoxication instruction was part of the trial strategy and, aside from citing *Crace v. Herzog*, 798 F.3d 840, 853 (9th Cir. 2015), petitioner has not put forth any argument or evidence that the court of appeals unreasonably applied the *Strickland* standard in making this determination. *See* Dkt. 13 at 7.

As the court of appeals observed and the record demonstrates, counsel's theory of the case involved "avoiding Hill's intoxication." Dkt. 27-1 at 26, Opinion, Court of Appeals Cause No. 16-1-04605-5, January 23, 2019. Specifically, the court of appeals considered the fact that throughout the trial, petitioner's counsel "avoided Hill's intoxication and instead attempted to cast doubt on the strength of the State's case," evidenced by petitioner's guilty plea on the DUI charge, defense counsel's motion in limine to exclude photos of alcohol found in the vehicle, successfully prohibiting the State from cross-examining petitioner on the drugs found in his vehicle, and not questioning him about his intoxication on direct examination. *Id.*  A defense counsel's performance is not constitutionally ineffective if, "with adequate knowledge of the law

and the evidence," they choose not to request a jury instruction as long as such a choice is reasonable. *Butcher v. Marquez*, 758 F.2d 373, 376-77 (9th Cir. 1985).

Here, petitioner has presented no evidence rebutting the presumption that counsel's decision not to pursue a voluntary intoxication instruction "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. In his PRP, petitioner did not show that counsel's performance was deficient or that the deficiency prejudiced him. Rather, petitioner only stated that had his counsel informed him of the jury instructions, he would have insisted that they be given. Dkt.27-1 at 227-231, Personal Restraint Petition, Court of Appeals Cause No. 54586-1-II, May 8, 2020. The opinion in *Crace*, 798 F.3d at 853, relied upon by petitioner, is distinguishable because in that case, counsel explicitly stated in a declaration that he did not request a lesser-included jury instruction because he did not consider it.

Petitioner has not established the state court unreasonably applied the *Strickland* standard to his counsel's failure to request a voluntary intoxication instruction. Petitioner's claim of ineffective assistance of counsel based upon this failure should be dismissed.

ii.    Unlawful display of a weapon

As for the alleged failure to discuss the lesser included instruction on unlawful display of a weapon, again petitioner provided no evidence that counsel was deficient in not discussing the instruction and the Commissioner of the Washington Supreme Court did not unreasonably apply *Strickland* in determining that petitioner failed to meet his burden. *Strickland*, 466 U.S. at 687. However, again even if petitioner had presented any evidence, the court of appeals determined that under *State v. Workman*, 90 Wn.2d

443, 447 (1978), petitioner was not entitled to the instruction and thus petitioner's

counsel was not deficient in not requesting it. Dkt. 27-1 at 32, Opinion, Court of Appeals

Cause No. 16-1-04605-5, January 23, 2019.

Under *Workman*, there are two conditions for entitlement to a lesser included

instruction: (1) "each of the elements of the lesser offense must be a necessary element

of the offense charged" and, (2) "the evidence in the case must support an inference

that the lesser crime was committed." *Workman*, 90 Wn.2d at 447-448. The court

concluded that the legal prong of *Workman* was not satisfied:

> A person is guilty of third degree assault if he or she "[a]ssaults a law
> enforcement officer . . . who was performing his or her official duties at the time
> of the assault." RCW 9A.36.031(1)(g). The criminal code does not define assault.
> *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006). Therefore, we
> apply the common law definitions. *Stevens*, 158 Wn.2d at 310-11. A person
> commits assault when he or she intentionally puts another in apprehension and
> fear of bodily injury. *Stevens*, 158 Wn.2d at 311.
>
> To convict a defendant of unlawful display of a weapon the State must prove that
> the defendant
>
>> carr[ied], exhibit[ed], display[ed], or [drew] any firearm, dagger, sword,
>> knife or other cutting or stabbing instrument, club, or any other weapon
>> apparently capable of producing bodily harm, in a manner, under
>> circumstances, and at a time and place that either manifest[ed] an intent
>> to intimidate another or that warrant[ed]alarm for the safety of other
>> persons.
>
> RCW 9.41.270(1).The elements of unlawful display of a weapon are not
> necessary elements of third degree assault based on the assault of a law
> enforcement officer. It is possible to commit third degree assault by assaulting a
> law enforcement officer without carrying, exhibiting, displaying, or drawing a
> weapon apparently capable of producing bodily harm. Because each element of
> unlawful display of a weapon is not a necessary element of third degree assault,
> unlawful display of a weapon is not a lesser included offense of third degree
> assault. *Compare* RCW 9.41.270(1), *with* RCW 9A.36.021. Therefore, the legal
> prong of the *Workman* test is not satisfied. Because Hill was not entitled to an
> instruction on the lesser included offense of unlawful display of weapon, Hill
> cannot demonstrate that defense counsel rendered deficient performance, and
> Hill's claim fails.

Dkt. 27-1 at 31-32, Opinion, Court of Appeals Cause No. 16-1-04605-5, January 23, 2019. As the court of appeals observed, because each element of unlawful display of a weapon is not a necessary element of third degree assault, the legal prong of the *Workman* test was not satisfied and petitioner was not entitled to an instruction on unlawful display of a weapon. *Id*. Petitioner argues, in ground one, that the court of appeals failed to follow *Workman*, however, he provides no argument as to *how* the state court failed to follow *Workman*. Dkt. 13 at 5. Petitioner also cites two other cases but only cites to the case name and the Court is unable to distinguish what cases he is referring to; petitioner does not provide any argument about the applicability of these cases to this case in any matter. Regardless petitioner's argument fails, as stated, the court of appeals correctly applied the *Workman* standard and thus determined that counsel was not deficient in not requesting the instruction.

Accordingly, the court properly applied the *Strickland* standard; petitioner's counsel was not deficient in not requesting the instruction or in talking with him about it because he was not entitled to it under Washington law. *Strickland*, 466 U.S. at 687

Petitioner has not established the state court unreasonably applied the *Strickland* standard to his counsel's failure to request a lesser included instruction on unlawful display of a weapon. Petitioner's claim of ineffective assistance of counsel based upon this failure should be dismissed.

**B.  Failure to advise on the indirect consequences of pleading guilty**

In ground three, petitioner contends his trial counsel failed to advise him on the consequences of pleading guilty. Dkt. 13 at 8. Petitioner raised this issue in a PRP. See

1  Dkt. 27-1 at 39, Commissioners Ruling Dismissing Personal Restraint Petition, Supreme

2  Court Cause No. 99970-8, February 4, 2022.

3        The Commissioner of the Washington Supreme Court found this claim was

4  frivolous because petitioner failed to demonstrate any legal support to show this

5  explanation was required. *Id*. at 39. The court based its decision on the fact that the

6  court is required to inform a defendant of all direct consequences of a plea, citing *State*

7  *v. Ross*, Wn.2d 279, 284 (1996).

8        The court of appeals did not unreasonably apply the *Strickland* standard, again

9  petitioner presented no evidence that his counsel was deficient or that this deficiency

10  was prejudicial to his defense. *Strickland*, 466 U.S. at 687.

11        Accordingly, petitioner's claim of ineffective assistance of counsel based upon

12  the failure to counsel about the consequences of pleading guilty should be dismissed.

13  **C.  Failure to open "pepper spray device"**

14        In ground four petitioner contends his trial counsel was ineffective because they

15  failed to instruct a deputy sheriff witness to open up the grey pepper spray device. Dkt.

16  13 at 10.

17        Petitioner raised this issue in a PRP. *See* Dkt. 27-1 at 38, Commissioners Ruling

18  Dismissing Personal Restraint Petition, Supreme Court Cause No. 99970-8, February 4,

19  2022. The Commissioner of the Washington Supreme Court found this claim was

20  frivolous because petitioner failed to state with particularity facts that, if proven, would

21  entitle him to relief. *Id*. at 38. The Commissioner specifically noted that petitioner

22  provided no evidence that opening the mace canister would have aided the defense. *Id*.

23  at 39.

24

25

The Commissioner did not unreasonably apply the *Strickland* standard. Petitioner failed to present any evidence to support his contention that his counsel's alleged failure to follow his directive regarding the contents of the "mace" device was deficient performance and did not provide any evidence to show that the deficiency was prejudicial to the defense. *Strickland*, 466 U.S. at 687.

Accordingly, petitioner's claim of ineffective assistance of counsel based upon the failure to instruct a witness to open a mace device should be dismissed.

**D. Failure to subpoena credit union video footage**

In ground five petitioner contends his trial counsel refused to follow his instruction to subpoena the manager of a credit union who had a camera that possibly viewed part or all of the incident. Dkt. 13 at 12. Petitioner alleges that this could have shown he did not drive back and four three times and argues that his counsel should have viewed the footage, rather than rely on the manager's statement that the car couldn't be seen on videotape. *Id*.

Petitioner raised this issue in a PRP. *See* Dkt. 27-1 at 38, Commissioners Ruling Dismissing Personal Restraint Petition, Supreme Court Cause No. 99970-8, February 4, 2022. The Commissioner of the Washington Supreme Court found this claim was frivolous because petitioner failed to state with particularity facts that, if proven, would entitle him to relief. *Id*. at 38. The Commissioner specifically noted that petitioner provided no evidence of a video that could support his allegations regarding the search. *Id*. at 38-39.

The Commissioner did not unreasonably apply the *Strickland* standard. Petitioner failed to present any evidence to support his contention that his counsel's alleged failure

to subpoena the credit union manager in order to view the video footage was deficient

performance and did not provide any evidence to show that the deficiency was

prejudicial to the defense. *Strickland*, 466 U.S. at 687.

Accordingly, petitioner's claim of ineffective assistance of counsel based upon

the failure to subpoena the credit union manager should be dismissed.

### E. Failure to subpoena witness

In ground six, petitioner contends his trial counsel refused to subpoena his BMW

mechanic who would have testified that his driver's side seat belt was weak and had no

recoiling function. Dkt. 13 at 12. He argues that this would have shown that he had

taken off his seatbelt. *Id*.

Petitioner raised this issue in a personal restraint petition. *See* Dkt. 27-1 at 38,

Commissioners Ruling Dismissing Personal Restraint Petition, Supreme Court Cause

No. 99970-8, February 4, 2022. The Commissioner of the Washington Supreme Court

found this claim was frivolous because petitioner failed to state with particularity facts

that, if proven, would entitle him to relief. *Id*. at 38. The Commissioner specifically noted

that petitioner provided no evidence that a mechanic would testify as he suggests. *Id*. at

39.

The Commissioner did not unreasonably apply the *Strickland* standard. Petitioner

failed to present any evidence to support his contention that his counsel's alleged failure

to subpoena his mechanic was deficient performance and did not provide any evidence

to show that the deficiency was prejudicial to the defense. *Strickland*, 466 U.S. at 687.

Accordingly, petitioner's claim of ineffective assistance of counsel based upon the

failure to call his BMW mechanic as a witness should be dismissed.

### F.  Failure to communicate regarding voluntary intoxication instruction

In ground seven, petitioner contends his trial counsel refused to communicate their decision regarding ground four, five and six. Dkt. 13 at 13. He states that had they communicated their decisions to him he would have fired them and proceeded *pro se*. *Id*. He states that had they communicated to him regarding the jury instructions (discussed above) they refused to propose to the trial court, he would have fired them. *Id*.

This does not appear to be its own ground but rather a reiteration of grounds four, five, and six. Therefore this ground is frivolous and should be dismissed for the reasons stated above.

### IV.  Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Id. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474.

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Further, the Supreme Court has held that, when reviewing a federal habeas petition under 28 U.S.C. § 2254, the federal court may not consider any facts beyond the factual

record presented to the state post-conviction relief court – unless one of the limited

exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*, 596 U.S. 366, 381-82

(2022).

The Court should hold that it is unnecessary to conduct an evidentiary hearing in

this case because, as discussed in this Report and Recommendation, the Petition may

be resolved on the existing state court record.

V.   Certificate of Appealability

If the Court adopts the undersigned's Report and Recommendation, it must

determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254

Cases in the United States District Courts ("The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant."). A COA

may be issued only where a petitioner has made "a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by

demonstrating that jurists of reason could disagree with the district court's resolution of

his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).

The undersigned recommends that a COA should be denied in this case. No

jurist of reason could disagree with the above evaluation of his constitutional claims or

conclude that the issues presented deserve encouragement to proceed further.

Petitioner should address whether a COA should issue in his written objections, if any,

to this Report and Recommendation.

1

CONCLUSION

2          Based on the foregoing discussion, the undersigned recommends that the Court

3   dismiss the petition for writ of *habeas corpus* with prejudice. A proposed order and

4   proposed judgment are attached.

5          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

6   have fourteen (14) days from service of this report to file written objections. *See also*

7   Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

8   purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

9   result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474

10  U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

11  omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

12  directed to set the matter for consideration on May 17, 2024, as noted in the caption.

13

14         Dated this 2nd day of May, 2024.

15

16

17         _Theresa L. Fricke_
           Theresa L. Fricke
18         United States Magistrate Judge

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 27